Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Bowie presiding along with Justice Moore and Justice McCain. The first case this morning is 5-220-320, Dorman v. Madison County. Arguing for the appellant is Michael Lauder. Arguing for the appellee is Timothy Sansone. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the proceedings. Good morning, counsel. Good morning, your honor. Are we ready to proceed? Yes, your honor. Will Mr. Lauder go right ahead? May it please the court. I'm Mike Lauder. I represent Rob Dorman, Doug Hume, and I'm a lawyer. I've been in this position for a long time. In this appeal, which is two cases actually joined, but ultimately they arise out of the same set of events, I'm not going to recite the facts as I believe they're properly set forth in the various briefs. Clearly here, the trial improperly dismissed the appellant's complaint as jurisdictional because the clerk did not issue a summons. However, in this case, equitable estoppel should bar the Madison County Council from asserting this defense after agreeing to accept service and its failure then to even file this objection for the issuance of the summons for 504 days. The complaint was timely filed, and the only pleading that was initially filed by defendant was that my clients failed to exhaust their administrative remedies. Clearly, there was reliance on the pleading filed by Gilbert. Either he was very clever or in some ways devious, although I know John Gilbert, he's a good lawyer, and I used to be partners with him. Anyway, Appelli in their brief did not defend Mr. Gilbert, and clearly this is a case of first impression in the sense that it happened during the pandemic. Clearly, Mr. Gilbert had the authority, and certainly his acceptance constituted a waiver of service in this case. Recall during the first few months of the pandemic, which is when this all occurred, how we were literally locked in our homes and homebound. I have attached the various orders applicable to the Madison County Courts at the time. This is different than any case that has come to form. Here, I cited the case of Sarkeesian versus Chicago Board of Education, which held that a public entity may delegate authority to accept service, and clearly that's what happened here. This is clearly based on equitable principles, as here, my clients very clearly relied on Mr. Gilbert accepting service. Further, the fact that he waited 504 days to assert this defense, I think, is clearly a factor that should be considered by this court. Further, I ask that the record be added to the tolling agreement, which, while on its face, is not applicable to this particular aspect of the case, but it does show the intent of the various parties here in attempting to, well, they were trying to resolve the case. In none of the cases that have been before any Illinois court, has there been anything like this. Specifically, the trial court did rely on the Morales versus Stone Park case. First of all, it was a Rule 23 opinion, but beyond that, it's not really on point. In actuality, there was simply a failure to join the additional party timely. That's not an issue here. The trial court also erred in not allowing the appellant to have a summons issued. Once, 504 days later, they raised the issue of failure to have the technical thing of a summons being issued. Clearly, the counsel, who was different than me at the time, he did in fact ask the court under Rule 183, which clearly would allow, had it been granted, the court to issue a summons and the like. It's clearly an abuse of discretion here. And the court, in that sense, should have allowed the summons to have been issued, given the egregious nature of the facts that it was waited to be done until such a long time after. In this case, we also have contended that there was violations of the Open Meeting Act. There were two meetings that comprised the termination of both Dorman and Hume on April 15 and then April 16. There was not a resolution until the April 16 meeting. First of all, the meeting agendas were insufficient regarding the resolutions to be taken up. In fact, at the meeting of the 16th, there was literally nothing about the resolutions to terminate the termination of both Dorman and Hume on April 16 and April 16. We do cite Attorney General opinions, and to the extent that they're not binding, but they are persuasive. And all three criticize the failure to be specific in the agenda regarding the termination of both Dorman and Hume on April 16 and April 16, and that the termination of both Dorman and Hume on April 16 and April 16 is not sufficient. We would ask this court to utilize the standard from the Rice v. Board of Trustees case and use that standard rather than the N. Ray Foxfield's subdivision standard. Now, here the meeting participants were not physically present, and thus it was not completely on the record. The order, and here we're getting into a, you know, pandemic matters very, very deeply in the sense that the only reason that this meeting was, this meeting was held virtually, and it was allowed to do so on the basis of Open Meetings Act requirement of being physically present. Now, we contend that his order was not proper as it pertained to the Madison County Board, and the fact of the matter is that only two months later did the Illinois State Legislature revise the Open Meeting Act to make it very clear as to how Open Meetings could be conducted. And they made it clear that it applied not just to state agencies but to public bodies. Here, the Illinois Emergency Act only applies to state agencies. It's unclear whether it applies to all public bodies. In any event, for that reason, it's clear that the act which allowed this meeting, these meetings on April 15 and April 16, clearly that meeting should be null and void. Further, and it was raised by me only in my reply brief because quite frankly I did not see it, but that is that the judgment of the trial court in the Open Meetings Act case was on a summary judgment and was not, and the question then is what was the evidence? And it is clear that while the minutes of what purports to be the meetings of the 15th and the 16th were attached to the motion, there is no affidavit, there is no certification, there is no basis. And thus, summary judgment would be inappropriate. The minutes of the meetings go in the record from page A162 to page A264. Further, we know that there was communication between the various parties during the meeting by text or whatever as was reported to the Illinois Attorney General. And at a minimum, while we know that there were five, according to Illinois Attorney General, and a quorum would be eight, it basically is clear that there is and potentially many fact questions regarding this aspect of the case. Next, we do contend that on numerous occasions, counsel moved this court or petitioned this court to in fact have a substitution of judges, which was never either properly considered, which would be with another judge. And secondly, it's clear that this entire matter was a part of the Madison County Courthouse over the last, over a year, two year period of time. While there was not a, it was not verified, these facts are clear, and it is clear that the manifest way to the evidence would require this. Finally, in their brief, they raised the issue of whether or not there was in fact a failure to exhaust administrative remedies. Clearly, this was heard by the whole board and therefore is in fact a, they did exhaust their remedies. Finally, I would ask that this court, for the various numerous reasons, reverse both cases, send them back for a hearing on the merits and allow my clients to have something besides Madison County Justice. Thank you. Thank you, counsel. Before we move on, Justice McKinney or Justice Moore, do you have any questions of Mr. Lawton? All right, thank you. Obviously, you have time for rebuttal. Mr. Sansone, go right ahead. Thank you, your honor. May it please the court. I'm not sure what Madison County Justice refers to, but that is another illustration of the fact that there's no support for the motion for substitution. And as we point out in the brief, there is an issue of preservation that was not addressed by counsel during his opening oral argument. At the end of the day, there was no basis for the court to provide any relief because other than innuendo, there was nothing indicating that there was any wrongdoing or that the judge was somehow unable or the Madison County courts were somehow unable to resolve the issue. So that takes care of the first point on appeal. When it comes to the second point dealing with the motion to dismiss, the administrative review law is something that can be considered by this court. As we point out in our brief, there is precedent for the appellate court considering any basis for the court to affirm what the lower court did. And we point out that the administrative law was not followed. There was no grievance. And I understand the opposition's point that there was a very large majority in favor of the decision to dismiss these two individuals. But that doesn't mean that you can simply dispense with the administrative law. You still have to go through it. You can't just say, well, it was overwhelming that these two individuals were dismissed. And so I don't have to go through that process. So that doesn't hold up. In terms of the summons, we've got our points in the brief. I'm not going to spend any more time on that. The Morales case actually is on point. But I'll let the brief speak as to the rest of the argument. Even if the court agrees with that point, you still have the problem with the administrative law not being complied with. When it comes to the Open Meetings Act arguments, first of all, Section 21005B says you can move for summary judgment with or without affidavits. Secondly, if you look at the complaint at Appendix 128 and Common Law Record 8, Paragraph 6, they set forth in the complaint what the agenda said. And on Appendix 134, C14, Paragraph 6, we admit what was stated. That's a judicial admission. So that's another basis for moving forward with summary judgment. Also, these are public records, and the court is entitled to take judicial notice of public records in its discretion. Also, the appellants put this into issue. They argue that these documents, what happened, the records of what happened somehow indicate that something wrong was done. This is analogous to a breach of contract case in which the contract is not attached to the complaint. And then on summary judgment, the plaintiff argues, well, you never put the contract in front of anybody, so there's no evidence. And finally, this is akin at the summary judgment stage to offering a document, and there's no objection to that document. The first time this is raised is in the reply brief on appeal. And this is yet another illustration, as we point out in the brief, of another issue being raised for the first time on appeal, and there being no preservation of the issue. I think our brief lays out the arguments very well, Your Honors, and I respect the court's time. I think that on all points, there's a strong basis for this court to affirm. I understand these individuals are upset with having been dismissed, but I think when the court looks at the record, looks at everything that was done, and the things that were not done that were supposed to be done, there's a strong basis for this court to affirm. And so, unless there are any questions from any of the honorable judges of this court, I would rest on the brief and the arguments that I've just made in this oral argument. Well, thank you, counsel. Justice Moore and Justice Campaini, do you all have any questions at this point? No questions. No questions. All right. Well, thank you, counsel. Thank you, Your Honor. Mr. Lauder, go right ahead with any rebuttal. Yes. Well, I do think that the briefs properly and adequately state matters. I am regarding the failure to produce evidence. I do believe that the failure to attach affidavits for the various minutes of the meetings is a real problem. While a judge can take judicial notice, there's no evidence that that was in fact done in this case. And further, the fact of the matter is that there has to be an evidentiary basis of some sort to grant a summary judgment. You can't create it out of literal thin air. Regarding the Morales case, again, I don't think it is appropriate here. And I do think that based upon the fact that this occurred during the pandemic, that clearly Mr. Gilbert went one step further, I think, and the fact that once they did raise this argument that the court should have allowed the issuance of the summons. There's no harm and no foul here, no prejudice at all. And so for those reasons, I would ask that this court return both cases to the trial court for further proceedings. Thank you. Thank you, counsel. Before we let you two go for the day, I'll ask one more time, Justice McKinney or Justice Moore, do you have any questions? No questions. All right. Well, thank you, counsel. Obviously, we will take the matter under advisement and we will issue an order in due course.